UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Civil Action No.:   3:17-cv-01305

CHRISTOPHER M. SHEA,

Plaintiff,

vs.

UNION BELL, LLC and ROBERT V. CARAVELLO, both doing business as
CHICAGO SAM'S SPORTS BAR & GRILLE, and STEPHEN R. BUELL,

Defendants.

*Filed:  August 2, 2017*

**COMPLAINT FOR MONETARY RELIEF
WITH DEMAND FOR A JURY TRIAL**

*A.  Parties.*

1.      The plaintiff, Christopher M. Shea (hereinafter "Shea"), is a natural person who resides at 80 Pineridge Drive, Westfield, Massachusetts.

2.      The defendant, Stephen R. Buell (hereinafter "Buell"), is a natural person who resides at 272 Quail Run Road, Suffield, Connecticut.

3.      The defendant, Robert V. Caravello (hereinafter "Caravello"), is a natural person who resides at 16 Boyle Drive, Enfield, Connecticut and who conducts his business as, and maintains a principal place of business at, Chicago Sam's Sports Bar & Grille, 95 Elm Street, Enfield, Connecticut.

4.      The defendant, Union Bell, LLC (hereinafter "Union Bell"), is a limited liability company organized under the laws of the State of Connecticut, which conducts its

1

business as, and maintains a principal place of business at, Chicago Sam's Sports Bar & Grille, 95 Elm Street, Enfield, Connecticut.

*B. Jurisdiction and Venue.*

5.     Jurisdiction over the subject matter of this civil action is conferred by 28 U. S. C. § 1332(a)(1), in that this action is between citizens of different states and the matter in controversy exceeds the sum of value of Seventy-Five Thousand and 00/100 ($75,000.00) Dollars, exclusive of interest and costs and, to the extent that there is not original jurisdiction over any individual claim in this proceeding, the Court possesses jurisdiction over all such claims under the supplemental jurisdiction conferred by 28 U. S. C. § 1367.

6.     Jurisdiction over Buell is based upon his domicile and residence in Connecticut and is further based upon the fact that the claims against him in this proceeding arise in significant part from his activities, presence and transaction of business in Connecticut.

7.     Jurisdiction over Caravello is based upon his domicile and residence in Connecticut and is further based upon the fact that the claims against him in this proceeding arise from his activities, presence and transaction of business in Connecticut.

8.     Jurisdiction over Union Bell is based upon its domicile and residence in Connecticut and is further based upon the fact that the claims against it in this proceeding arise from its activities, presence and transaction of business in Connecticut.

9.     Venue of this action in this Court is proper pursuant to 28 U. S. C. § 1391(b)(1), in that all defendants reside or are domiciled in this district.

### C. Common Factual Circumstances.

10.      At all times relevant, including on August 10, 2016, Union Bell owned and operated a restaurant and bar known as Chicago Sam's Sports Bar & Grille, located at 95 Elm Street, Enfield, Connecticut (hereinafter "Chicago Sam's").

11.      At all times relevant, including on August 10, 2016, Union Bell was the proprietor of Chicago Sam's and was engaged in the service and sale of alcoholic liquor at Chicago Sam's.

12.      At all times relevant, including on August 10, 2016, Caravello was, pursuant to Connecticut General Statutes § 30 - 74 (a) and (b), the holder of a permit for and the permittee of and for Chicago Sam's, all relating to the sale of alcoholic liquor and beverages at Chicago Sam's.

13.      As the holder of a permit for and the permittee of and for Chicago Sam's relating to the sale of alcoholic liquor and beverages, Caravello had full control and authority of the permit and business premises of Chicago Sam's at 95 Elm Street, Enfield, Connecticut, including the bar located there for the sale and service of alcohol liquor and beverages (hereinafter "the Permit Premises"), and of the conduct of the business of Chicago Sam's on the Permit Premises with respect to the sale of alcoholic liquor and beverages.

14.      At all times relevant, including on August 10, 2016, Union Bell was, pursuant to Connecticut General Statutes § 30 - 39 (a) and (b), the backer of and for Caravello as permittee of and for Chicago Sam's relating to the sale of alcoholic liquor and beverages.

15.     As the backer of Caravello, Union Bell, through its authorized agents, servants or employees, acted as the authorized agent and representative of Caravello relating to the sale of alcoholic liquor and beverages at Chicago Sam's and on the Permit Premises.

16.     At all times relevant, including on August 10, 2016, and pursuant to § 30 - 6 - A9 of the Regulations of Connecticut State Agencies, entitled "*Permittee responsible for actions of employee or agent*", Connecticut law mandated that "[i]n disciplinary proceedings, it shall be no defense that an employee or agent of a permittee or backer acted contrary to order, or that a permittee or backer did not participate in the violating action or actions."

17.     At all relevant times, including on August 10, 2016, and pursuant to § 30 – 6 - A9 of the Regulations of Connecticut State Agencies, Connecticut law mandated that "[a] permittee and backer shall be held strictly liable for any violation of the statutes, regulations, policies and stipulations of the [Connecticut] department [of Consumer Protection] when such violation concerns their permit premises or their applications regarding their proposed permit premises."

18.     At all times relevant, including on August 10, 2016, Union Bell, by its authorized agents, servants or employees, invited the public to enter Chicago Sam's to consume acholic liquor and beverages at the Permit Premises.

19.     At all times relevant, including on August 10, 2016, Union Bell, by its authorized agents, servants or employees, sold alcoholic liquor and beverages to the patrons of Chicago Sam's at the Permit Premises.

4

20.     At all times relevant, including on August 10, 2016, Caravello, individually, and by his authorized agents, servants or employees, including the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello, invited the public to enter Chicago Sam's to consume acholic liquor and beverages on the Permit Premises.

21.     At all times relevant, including on August 10, 2016, Caravello, individually, and by his authorized agents, servants or employees, including the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello, sold alcoholic liquor and beverages to the patrons of Chicago Sam's and the bar on the Permit Premises.

22.     On August 10, 2016, at approximately 7:30 p.m., Buell entered and was a patron of Chicago Sam's and the bar on the Permit Premises.

23.     On August 10, 2016, at approximately 10:30 p.m., Shea entered and was a patron of Chicago Sam's and the bar on the Permit Premises.

24.     From approximately 7:30 p.m. until approximately 11:55 p.m. on August 16, 2016, Buell was served at least twelve alcoholic beverages at Chicago Sam's and the bar on the Permit Premises by the authorized agents, servants or employees of Union Bell and, as a result thereof, became intoxicated on was rendered under the influence of alcohol.

25.     From approximately 7:30 p.m. until approximately 11:55 p.m. on August 16, 2016, Buell was served and consumed at least twelve alcoholic beverages at Chicago Sam's and the bar on the Permit Premises by Caravello, or by the authorized agents,

servants or employees of Caravello, including the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello and, as a result thereof, became intoxicated on and was rendered under the influence of alcohol.

26.     On August 11, 2016, at approximately 12:50 a.m., Shea was the passenger in a motor vehicle operated by Buell in a northerly direction in the northbound left lane of Interstate Route 91, at or about the 2 mile marker, in Longmeadow, Massachusetts.

27.     At that time and time and place, Buell suddenly and without warning caused the motor vehicle he was then operating to violently strike from behind and collide with and crash into a tractor trailer operating in the middle lane of Interstate Route 91 (hereinafter "the Crash").

### D.   Claims for Relief.

### COUNT I
### Negligence of Buell.

28.     The Crash, and the injuries, damages, and losses sustained by Shea that resulted from the Crash, were a direct and proximate result of the carelessness and negligence and recklessness of Buell in operating his motor vehicle while under the influence of alcohol, in failing to warn Shea that he was under the influence of alcohol, in speeding in his vehicle, in failing to keep his vehicle safely within marked lanes, in following the tractor trailer too closely, in failing to use care in stopping, and in operating his vehicle in a negligent, reckless and dangerous manner, having regard to the width, traffic, conditions and circumstances then and there present.

29.     As a direct and proximate result of the carelessness and negligence and recklessness of Buell, and the resulting Crash, Shea has suffered the following severe, painful and permanent injuries, including but not limited to:

a.     Grade 3C open proximal right humeral shaft fracture, with nonunion;

b.     Brachial plexus and axillary artery injury;

c.     Initial saphenous vein graft, followed by plating of the humeral shaft fracture and axillar artery saphenous interposition graft;

d.     Traumatic amputation of right upper extremity, below the deltoid but above the biceps insertion, followed by multiple debridements and had multiple surgical procedures to promote healing of the bone;

e.     Right rotator cuff injury;

f.     Osteomyelitis of the right proximal humerus;

g.     Related multiple contusions;

h.     Related multiple surgeries;

i.     Related scaring;

j.     Permanent disability;

k.     Shock to his nervous system;

l.     Associated and pain and suffering;

m .     Permanent impairment to his whole person;

n.     Permanent impairment to his emotional function;

o.     Depression and difficulty sleeping as a result of the injuries he sustained;

p.     Acute anxiety reaction accompanied by its usual symptoms;

q.     Embarrassment and humiliation; and

r.      Great pain of body and mind.

30.      As a further direct and proximate result of the carelessness and negligence and recklessness of Buell, and the resulting Crash, Shea incurred more than Six Hundred Thousand ($600,000.00) and 00/100  in medical expenses, and will continue to incur expenses for medical care and treatment, prosthetic devices, emergency room care, physical therapy, x-rays and other diagnostic evaluation and medicine, all to his financial detriment and loss.

31.      As a further direct and proximate result of the carelessness and negligence and recklessness of Buell, and the resulting Crash, Shea lost time from work and was unable to attend to his usual occupational duties in the same manner as he had prior to the Crash and his earning capacity will continue to be impaired in the future, all to his further financial detriment and loss.

32.      As a further direct and proximate result of the carelessness and negligence and recklessness of Buell, and the resulting Crash, Shea has been caused to suffer an overall physical discomfort and disability which imposes a severe limitation on his ability and capacity to carry on and enjoy all life activities in the same manner as he had prior to the Crash.

*WHEREFORE*, the plaintiff, Christopher M. Shea, demands judgment against the defendant, Stephen R. Buell, for compensatory damages in the amount of Ten Million ($10,000,000.00) and 00/100 Dollars, together with statutory interest, costs, counsel fees and such other and further relief as the court deems appropriate.

COUNT II
Connecticut General Statutes § 30-102
Strict Liability of Caravello

33.     Shea incorporates herein by reference the averments of the preceding paragraphs.

34.     From approximately 7:30 p.m. until approximately 11:55 p.m. on August 10, 2016, Caravello, individually, and by his authorized agents, servants or employees, including the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello, and in violation of Connecticut General Statutes § 30-102, served alcoholic beverages to Buell at Chicago Sam's and the bar on the Permit Premises, both before Buell became intoxicated, and continued to serve alcoholic beverages to Buell after he became intoxicated on and under the influence of alcohol.

35.     At approximately 11:55 on August 10, 2016, Buell left Chicago Sam's and the bar on the Permit Premises and drove away in his motor vehicle.

36.     As a direct and proximate result and consequence of the intoxication of Buell, the Crash occurred and Shea was caused to suffer the injuries, damages, harm and losses set forth in paragraphs 29 through and including 32 above, the contents of which are incorporated herein by reference (hereinafter collectively referred to as "the Damages Suffered by Shea").

37.     The intoxication of Buell, the Crash and the Damages Suffered by Shea, were the direct and proximate result and consequence of the aforementioned acts and omissions of Caravello individually and by his authorized agents, servants or employees, including

the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello, all in violation of Connecticut General Statutes § 30-102.

38.     The aforementioned independent acts and omissions of Buell and of Caravello, individually and by his authorized agents, servants or employees, including the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello, combined to produce the intoxication of Buell, the Crash and the Damages Suffered by Shea, such that Buell and of Caravello are joint tortfeasors who are jointly and severally liable for the Damages Suffered by Shea.

39.     On August 23, 2016, Shea gave written notice of his claims  herein, pursuant to Connecticut General Statute § 30-102, to Caravello, individually, and to Union Bell, his authorized agent and representative and backer with respect to the conduct of the business of Chicago Sam's on the Permit Premises with respect to the sale of alcoholic liquor (hereinafter "the Written Notice").

40.     On August 26, 2016, the Written Notice was received by Caravello, and Union Bell, his authorized agent and representative and backer with respect to the conduct of the business of Chicago Sam's on the Permit Premises with respect to the sale of alcoholic liquor.

*WHEREFORE*, the plaintiff, Christopher M. Shea, demands judgment against the defendants, Stephen R. Buell and Robert V. Caravello, jointly and severally, for compensatory damages in the amount of Ten Million ($10,000,000.00) and 00/100

Dollars, together with statutory interest, costs, counsel fees and such other and further relief as the court deems appropriate.

COUNT III
Connecticut General Statutes § 30-102
Strict Liability of Union Bell

41.     Shea incorporates herein by reference the averments of the preceding paragraphs.

42.     From approximately 7:30 p.m. until approximately 11:55 p.m. on August 10, 2016, Union Bell, by its authorized agents, servants or employees, who were also acting as the authorized agents, servants or employees of Caravello, and in violation of Connecticut General Statutes § 30-102, served alcoholic beverages to Buell at Chicago Sam's and the bar on the Permit Premises, both before Buell became intoxicated, and continued to serve alcoholic beverages to Buell after he became intoxicated on and under the influence of alcohol.

43.     At approximately 11:55 on August 10, 2016, Buell left Chicago Sam's and the bar on the Permit Premises and drove away in his motor vehicle.

44.     As a direct and proximate result and consequence of the intoxication of Buell, the Crash occurred and Shea was caused to suffer the Damages Suffered by Shea.

45.     The intoxication of Buell, the Crash and the Damages Suffered by Shea, were the direct and proximate result and consequence of the aforementioned acts and omissions of Union Bell by its authorized agents, servants or employees, who were also acting as the authorized agents, servants or employees of Caravello, all in violation of Connecticut General Statutes § 30-102.

46.     The aforementioned independent acts and omissions of Buell and of Caravello and of Union Bell, individually and by its authorized agents, servants or employees, who were also acting as the authorized agents, servants or employees of Caravello, combined to produce the intoxication of Buell, the Crash and the Damages Suffered by Shea, such that Buell and Caravello and Union Bell are joint tortfeasors who are jointly and severally liable for the Damages Suffered by Shea.

47.     By the Written Notice, and on August 23, 2016, Shea gave written notice of his claims herein, pursuant to Connecticut General Statute § 30-102, to Caravello, individually, and to Union Bell, his authorized agent and representative and backer with respect to the conduct of the business of Chicago Sam's on the Permit Premises with respect to the sale of alcoholic liquor.

48.     On August 26, 2016, the Written Notice was received by Caravello, and Union Bell, his authorized agent and representative and backer with respect to the conduct of the business of Chicago Sam's on the Permit Premises with respect to the sale of alcoholic liquor.

*WHEREFORE*, the plaintiff, Christopher M. Shea, demands judgment against the defendants, Stephen R. Buell and Robert V. Caravello and Union Bell, LLC, jointly and severally, for compensatory damages in the amount of Ten Million ($10,000,000.00) and 00/100 Dollars, together with statutory interest, costs, counsel fees and such other and further relief as the court deems appropriate.

COUNT IV
Recklessness of Caravello

49.     Shea incorporates herein by reference the averments of the preceding

paragraphs.

50.     On August 10, 2016, and at the time that Buell was served alcoholic

beverages at Chicago Sam's and the bar on the Permit Premises by the authorized agents,

servants or employees of Caravello, including the authorized agents, servants or

employees of Union Bell, who were also acting as the authorized agents, servants or

employees of Caravello, Caravello, individually and by his aforementioned authorized

agents, servants or employees:

   a.     knew or should have known that the patrons of Chicago Sam's on
   the Permit Premises, including Buell, would and did use motor vehicles to
   arrive at and to depart from the location of Chicago Sam's on the Permit
   Premises;

   b.     knew or should have known that if the patrons of Chicago Sam's on
   the Permit Premises, including Buell, who had arrived in motor vehicles
   left Chicago Sam's on the Permit Premises in an intoxicated state and drove
   while so intoxicated, that such drivers, including Buell, would pose a
   substantial risk of serious harm and death to others;

   c.     knew or should have known that if his aforementioned agents,
   servants or employees were not properly trained to recognize when a person
   was intoxicated, or had consumed sufficient alcoholic beverages to be
   intoxicated, that his aforementioned agents, servants or employees would
   be more likely to serve alcoholic beverages to one who was already
   intoxicated;

   d.     knew or should have known that if his aforementioned agents,
   servants or employees were not warned to deny alcoholic beverages to one
   who was intoxicated, or had consumed sufficient alcoholic beverages to be
   intoxicated, that his aforementioned agents, servants or employees would
   be more likely to serve alcoholic beverages to one who was already
   intoxicated;

e.      knew or should have known that intoxicated drivers of cars cause motor vehicle collisions and incidents that kill, maim and injure others than the intoxicated driver;

f.      knew that Buell was intoxicated, yet continued to serve alcoholic beverages to him; and

g.      knew of the excessive drinking of Buell.

51.      On August 10, 2016, and at the time that Buell was served alcoholic beverages at Chicago Sam's and the bar on the Permit Premises, and notwithstanding the knowledge of and notice to Caravello set forth in paragraph 50 herein, Carvello, individually and by his authorized agents, servants or employees, including the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello:

a.      failed to properly train his employees about how to recognize when a person was intoxicated;

b.      failed to have any, or adequate, training for his employees about how to refuse to sell or deliver alcoholic beverages to a person who was intoxicated, or so close to intoxicated that service to such person of more alcohol would make the person intoxicated or more intoxicated;

c.      failed to have any, or adequate, instructions, rules, regulations or standards for his staff that would guide the staff about how to recognize or determine when a person was intoxicated, or so close to intoxicated that service to such person of more alcohol would make the person more intoxicated, and what to do upon such recognition or determination;

d.      failed to have any, or adequate, instructions, rules, regulations, or standards for his staff about how to refuse to sell or deliver alcoholic beverages to a person who was intoxicated, or so close to intoxicated that service to such person of more alcohol would make the person intoxicated or more intoxicated;

e.      failed to take the keys to the motor vehicle of Buell in order to prevent him from driving in an intoxicated state, and otherwise failing to prevent Buell from operating a motor vehicle;

f.      failed to have any, or adequate, instructions, rules, regulations or standards regarding the proper and safe service of alcohol to its patrons;

g.      served alcohol to his patron Buell in such quantities that he became significantly intoxicated; and

h.      continued to serve alcohol to his patron Buell, even after he was significantly was intoxicated.

52.     The aforementioned acts and omissions of Caravello, individually and by the authorized agents, servants or employees of Caravello, including the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello, constitute reckless misconduct, in that his knowledge of the aforementioned facts would lead a reasonable person to conclude that his conduct not only created an unreasonable risk of bodily harm to others, but also involved a high degree of probability that substantial harm to others would result.

53.     The aforementioned acts and omissions of Caravello, individually and by the authorized agents, servants or employees of Caravello, including the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello, reveal a reckless indifference to the rights of others such that punitive damages should be awarded.

54.     The intoxication of Buell, the Crash and the Damages Suffered by Shea, were the direct and proximate result and consequence of the aforementioned reckless acts

15

and omissions of Caravello, individually and by his aforementioned authorized agents, servants or employees.

55.     The aforementioned and independent acts and omissions of Buell and of Caravello, individually and by his respective authorized agents, servants or employees of Caravello, combined to produce the intoxication of Buell, the Crash and the Damages Suffered by Shea, such that Buell and Caravello are joint tortfeasors who are jointly and severally liable for the Damages Suffered by Shea.

*WHEREFORE*, the plaintiff, Christopher M. Shea, demands judgment against the defendant, Stephen R. Buell and Robert V. Caravello, jointly and severally, for compensatory damages in the amount of Ten Million ($10,000,000.00) and 00/100 Dollars, together with punitive damages and statutory interest, costs, counsel fees and such other and further relief as the court deems appropriate.

COUNT V
Recklessness of Union Bell

56.     Shea incorporates herein by reference the averments of the preceding paragraphs.

57.     On August 10, 2016, and at the time that Buell was served alcoholic beverages at Chicago Sam's and the bar on the Permit Premises by the authorized agents, servants or employees of Union Bell, who were also acting as the authorized agents, servants or employees of Caravello, Union Bell:

a.      knew or should have known that the patrons of Chicago Sam's on the Permit Premises, including Buell, would and did use motor vehicles to arrive at and to depart from the location of Chicago Sam's on the Permit Premises;

16

b.      knew or should have known that if the patrons of Chicago Sam's on the Permit Premises, including Buell, who had arrived in motor vehicles left Chicago Sam's on the Permit Premises in an intoxicated state and drove while so intoxicated, that such drivers, including Buell, would pose a substantial risk of serious harm and death to others;

c.      knew or should have known that if his aforementioned agents, servants or employees were not properly trained to recognize when a person was intoxicated, or had consumed sufficient alcoholic beverages to be intoxicated, that his aforementioned agents, servants or employees would be more likely to serve alcoholic beverages to one who was already intoxicated;

d.      knew or should have known that if his aforementioned agents, servants or employees were not warned to deny alcoholic beverages to one who was intoxicated, or had consumed sufficient alcoholic beverages to be intoxicated, that its aforementioned agents, servants or employees would be more likely to serve alcoholic beverages to one who was already intoxicated;

e.      knew or should have known that intoxicated drivers of cars cause motor vehicle collisions and incidents that kill, maim and injure others than the intoxicated driver;

f.      knew that Buell was intoxicated, yet continued to serve alcoholic beverages to him; and

g.      knew of the excessive drinking of Buell.

58.      On August 10, 2016, and at the time that Buell was served alcoholic beverages at Chicago Sam's and the bar on the Permit Premises, and notwithstanding the knowledge of and notice to Union Bell set forth in paragraph 57 herein, Union Bell, by its authorized agents, servants or employees, who were also acting as the authorized agents, servants or employees of Caravello:

a.      failed to properly train his employees about how to recognize when a person was intoxicated;

17

b.      failed to have any, or adequate, training for his employees about how to refuse to sell or deliver alcoholic beverages to a person who was intoxicated, or so close to intoxicated that service to such person of more alcohol would make the person intoxicated or more intoxicated;

c.      failed to have any, or adequate, instructions, rules, regulations or standards for his staff that would guide the staff about how to recognize or determine when a person was intoxicated, or so close to intoxicated that service to such person of more alcohol would make the person more intoxicated, and what to do upon such recognition or determination;

d.      failed to have any, or adequate, instructions, rules, regulations, or standards for his staff about how to refuse to sell or deliver alcoholic beverages to a person who was intoxicated, or so close to intoxicated that service to such person of more alcohol would make the person intoxicated or more intoxicated;

e.      failed to take the keys to the motor vehicle of Buell in order to prevent him from driving in an intoxicated state, and otherwise failing to prevent Buell from operating a motor vehicle;

f.      failed to have any, or adequate, instructions, rules, regulations or standards regarding the proper and safe service of alcohol to its patrons;

g.      served alcohol to its patron Buell in such quantities that he became significantly intoxicated; and

h.      continued to serve alcohol to its patron Buell, even after he was significantly was intoxicated.

59.      The aforementioned acts and omissions of Union Bell, by its authorized agents, servants or employees, who were also acting as the authorized agents, servants or employees of Caravello, constitute reckless misconduct, in that its knowledge of the aforementioned facts would lead a reasonable person to conclude that its conduct not only created an unreasonable risk of bodily harm to others, but also involved a high degree of probability that substantial harm to others would result.

60.    The aforementioned acts and omissions of Union Bell, by its authorized agents, servants or employees, who were also acting as the authorized agents, servants or employees of Caravello, reveal a reckless indifference to the rights of others such that punitive damages should be awarded.

61.    The intoxication of Buell, the Crash and the Damages Suffered by Shea, were the direct and proximate result and consequence of the aforementioned reckless acts and omissions of Union Bell, by its aforementioned authorized agents, servants or employees.

62.    The aforementioned and independent acts and omissions of Buell and of Caravello and of Union Bell, individually and by the respective authorized agents, servants or employees of Caravello and Union Bell, combined to produce the intoxication of Buell, the Crash and the Damages Suffered by Shea, such that Buell and Caravello and Union Bell are joint tortfeasors who are jointly and severally liable for the Damages Suffered by Shea.

*WHEREFORE*, the plaintiff, Christopher M. Shea, demands judgment against the defendant, Stephen R. Buell and Robert V. Caravello and Union Bell, LLC, jointly and severally, for compensatory damages in the amount of Ten Million ($10,000,000.00) and 00/100 Dollars, together with punitive damages and statutory interest, costs, counsel fees and such other and further relief as the court deems appropriate.

### E.   Request for Jury Trial.

Shea requests a trial by jury pursuant to Fed. R. Civ. P. 38.


Dated:  August 2, 2017                                    THE PLAINTIFF,
                                                          CHRISTOPHER M. SHEA,


                                                          /s/ Mark J. Albano

                                                    By:_____
                                                          Mark J. Albano, Esq.
                                                          ALBANO LAW, LLC
                                                          One Monarch Place, Suite 1330
                                                          Springfield, MA  01144-1330
                                                          Tel: (413) 736-3500
                                                          Fax: (413) 746-9224
                                                          Fed. Bar No.:  CT03974
                                                          Email:  mark@albanolawllc.com